[Filed July 2, 1888.]

## JAMES F. BEWLEY, Plaintiff, v. WILLIAM CHAPMAN AND GEORGE BERRY, Defendants.

BOUNDARY, EVIDENCE OF.— Where in a disputed boundary, the question to be determined rests wholly on facts, and there are circumstances inherent in the case of weight and importance, which are corroborated in substance by witnesses whose long residence in the neighborhood and opportunity to know give value to their testimony, *held*, sufficient to establish such boundary.

APPEAL from Yamhill County.

*George H. Durham, W. L. Bradshaw,* and *H. Y. Thompson,* for Respondent.

*McCain & Hurley,* for Appellants.

LORD, C. J.—This is a suit in equity to determine the boundary lines between the lands of the plaintiff and the defendants, under the provisions of the Act of 1887 relating to that subject. (Or. Code, § 506.) The plaintiff is the owner in fee of the donation land claim of Solomon Eades, and claims that the eastern boundary of said claim is a straight line from its southeastern corner to its northeastern corner as shown by the government survey, and that such boundary as thus drawn and described is the west boundary of the Chapman claim and the Lynch claim now owned by the defendant Berry. The defendants claim that the line in dispute was surveyed and located in 1852 by the government, and that Eades and Chapman built a partition fence between their respective claims on said line, and

that a continuation of said line southerly in the same course to the southeast corner of said Eades claim properly describes the line between the said Eades claim and the lands of the defendant Berry.

A good deal of evidence was taken, and the court below, after hearing the respective arguments of counsel, made its findings and rendered a decree thereon in favor of the plaintiff, and in accordance with the requirements of said act. To reverse this decree and establish the boundary line as claimed by the defendants is the object of this appeal. We shall not attempt to go into the details of the evidence, or to cite largely from it, for that would only encumber the record, without serving any useful purpose. As the case stands it will probably be as well to consider, first, the grounds and the evidence upon which the defendants claim the true boundary line to be as alleged. It is admitted that the Eades donation claim is the older of these donation claims, and that those of the defendant are adjoining, and necessarily that the east line of the Eades donation claim must be the west line of the Chapman donation claim, and the land of Berry as now owned by him. The contention of Mr. Chapman, one of the defendants, is based on his own evidence, and some other, corroborative in certain particulars, to the effect that after the first government survey, and when the corners were known, that he and Mr. Eades built a partition fence on the line thus located, and that when the final survey was made by the government the fence erected by them corresponded to the line then established as the east line of the Eades donation claim and the west line of his donation claim.

In 1862 Eades died, and there is nothing in the record to show that he was dissatisfied with the line, or that the final survey required any change of the fence built by them to be made. In 1864 Mr. Chapman testifies that he removed this partition fence thirty feet east on his land for the purpose of opening a road, and that it so remained until about 1876, when he moved it back to the original line upon which he and Mr. Eades had built the partition fence. His case, therefore, is that the fence, as removed in 1876, represents the true boundary line between

his lands and the plaintiff's, and this line protracted south to the southeast corner of the Eades donation claim must be the true division line between the plaintiff and the defendant Bewley. And he says in respect to the building of this fence in 1858 that it was done by Mr. Eades and himself, and that at that time the stakes or monuments set up by the government were plainly visible, and that they set up a stake with a flag upon it at the northeast corner and the southeast corner, and guided by these Eades built the north end, and that he built the south end. These facts, he claims, are sufficient to indicate with certainty where the line between these adjacent claims is, when backed by other evidence of facts which preserve its identity. But Eades is dead, and there is no other person who testifies to the location of that fence, or knows whether it was correctly established on the division line between these claims. His wife is cognizant of the fact of the building of the fence in 1858, and testifies to his removal of it thirty feet east on his land in 1864, and its removal back to the original line in 1876, and that there never was any dispute between Mr. Eades and her husband in respect to it. And one of the sons of Mr. Eades testifies that he recollects the fact of the defendant Chapman moving the fence east thirty feet in 1864 for the purpose of a road, and that t' defendant Chapman and his father built the original fence from the section corners.

There are also several witnesses who testify that they assisted in removing the fence in 1876 from the place where it was then located to the original line, and that such line was distinctly traced on the ground by ground chunks, rose-bushes, and briers that still grew where the old fence originally stood. And Faulkener and Burden, who both became subsequently the owners of the Eades claim, corroborate in some measure the existence of such a line, although Faulkener says: "We just moved on the line where we supposed the line was." And again: "It looked as if it was the same." And Burden says: "It was what was called the line, and there were some rose-bushes on the line, and a few ground chunks." The fact that the fence was removed in 1876 west to a line that indicated by some

ground chunks and rose-bushes the traces of an old fence is pretty well established, but whether this was the true division line or boundary, or whether it was the line on which Eades and Chapman had built their partition fence, is not clear, nor is it proved by these witnesses other than as before stated. That rests almost wholly upon the statement of the defendant Chapman, and the circumstances under which he narrates the building of that fence by Eades and himself is not favorable to exactness or accuracy in fixing the boundary between them, although it necessarily approximates to it as the difference now, and as found by the surveyor is not great.

Taking this evidence as true, it only indicates that these neighbors with adjoining lands put up the fence as near as they could ascertain, or at least upon which they supposed was the east line of the Eades donation claim, or their division line. There was no disputed boundary between them, or disagreement of any character, they simply put up the fence on the land as already stated, and lived up to it, on the assumption that it was the true boundary, neither claiming anything from the other, and consequently nothing to acquiesce in. There are, however, some facts, independent of the evidence of several witnesses of the plaintiff to a state of facts in contradiction of the testimony of the defendant, that tend to establish quite strongly the correctness of the line as fixed by the court below.

The Eades claim is the elder, and the east line of it, which is the boundary between these adjacent claims, must have been established by the survey before the Chapman claim may be said to have had an existence. Now by the field notes and patent, the east line of the Eades claim which forms the boundary in question is a straight line, while the line insisted upon by the evidence of the defendant would be deflected from a straight line. The field notes put the southeast corner of the Eades donation claim in the line that divides or bounds the Sparks and Lynch donation claims, and the evidence shows that the corner as fixed by the surveyor, Mr. Fenton, substantially agrees with the old fence on the line between these last-mentioned claims, which has stood for many years, and conforms to the line

as called for by the survey, and makes the lines connect without
deflection.   Besides it was said at the argument, and not contra-
dicted, that to run the east line as now established, and accord-
ing to the field notes of the survey, gives as it must the proper
quota of acres to the Eades and the Chapman donation claims,
while to fix it as contended for by the defendants would make
one of these claims less and the other more acreage than is called
for.   Moreover, when the situation and location of these adjacent
claims are considered, the lines by which they are bounded as
fixed by the government survey, and that the southeast corner
of the Eades donation claim is a common point in the line
between the Sparks and Lynch donation claims, it becomes
apparent that to change this disputed line, or the southeast corner
of the Eades donation claim from the place as located in the
decree, must disturb these lines, and result in the disarrangement
of boundaries of several claims and perhaps a confusion of titles.
While it is true in some particulars, there was some disagree-
ment among the surveyors, they are for all practical purposes a
unit as to the location of the southwest corner of the Eades
donation claim, and this is in conformity, or substantially so,
with the evidence of Lynch and Sparks, and there is much
other corroborative testimony by several witnesses introduced by
the plaintiff.

It may be also said that there is considerable evidence contra-
dicting the fact that Chapman ever moved the fence east, and
which goes to negative his contention, yet much of the testimony
introduced by Chapman in that particular is only valuable in
an auxiliary way, and upon the assumption that the original
fence claimed to have been built by Eades and Chapman was on
the true division line.   His evidence to this point is not con-
vincing, in view of circumstances inherent in the case which
overcome and outweigh it, although we may admit the building
of such original fence as testified to, and the honest endeavor to
fix it on the true line bounding these adjacent claims.

To sum up the whole, the result of our consideration of the
case is, that the decree is in conformity with the evidence and
the facts, and that this conclusion is in substantial conformity

with the evidence of several witnesses, whose long residence in the neighborhood and opportunity to know give additional weight and value to their testimony. We think the decree must be affirmed.